MARY B. PERRY

*v.*

ALVIN C. BOWMAN.

*Filed at Springfield, June 18, 1894.*

1. WILLS—*construction—intention governs.* In construing a will, the intention of the testator, as derived from all of its provisions, will control, and effect will be given to such intention when ascertained.

2. SAME—*devise—whether jointly or in severalty.* By the first clause in a will the testatrix devised all her estate, real and personal, to her eight children named, and directed that all advancements, before or thereafter made to any of her children, should be accounted for and deducted from such shares respectively, as they might be charged by her, or by her order: *Held*, that the will clearly evinced an intention that

the advancements made should be held in severalty by her children to· whom they were respectively given.

3. The will further provided that certain real estate, advanced by the testatrix to A., B., C. and D., separately and respectively, be by each of them held as a life estate without power of sale, etc., and then provided: "and it is my further will, that in each case where advancements have been made by me, or may hereafter be so made to any of my children, the same be by them held, together with whatever may be received by either of them under this will, * * * free from debts, etc." It appeared that 240 acres of land had been bought for A. before the date of the will, and he was placed in possession of the same, and that he was charged with the same as an advancement: *Held,* that. A. took a life estate in the 240 acres of land in severalty, and did not. take the same jointly with his brothers and sisters.

4. Same—*devise of "certain lands."* Where the testatrix provided "that certain real estate advanced" by her to four of her children, "separately and respectively, be by each of them held as a life estate," etc., it was held necessary to ascertain whether advancements had been made to them, or one of them, to which such devise applied, in order to make the will intelligible.

5. Same—*explaining by extrinsic evidence.* While extrinsic evidence · is not admissible to import into a will an intention not expressed in it, it is competent to show the fact or circumstance referred to by the testator, when necessary to identify the subject of disposition, or object of the testator's bounty. In construing a will, the court should always endeavor to read its expressions in the sense in which they were employed by the testator, and for this purpose, may consider it in the light of the facts and circumstances surrounding the testator at the time the will was made.

6. Tax Title—*sufficiency of affidavit for a deed—by whom to be made.* The requirement of section 217 of the Revenue law, that the affidavit of service of notice of the time the right of redemption from a tax sale will expire shall be made by the purchaser at the sale, his assignee or his agent, is mandatory. An affidavit made by one not the purchaser at the sale, or his assignee, who does not even profess to act as agent for the purchaser or his assignee, will not authorize the making of a tax deed.

7. Parol evidence is not admissible to supply defects or omissions in· the affidavit filed under section 217 of the Revenue act; and if the affidavit does not contain the facts necessary to authorize the county clerk to act, the tax deed will be void, regardless of what the real facts are.

Appeal from the Circuit Court of Greene County; the Hon. George W. Herdman, Judge, presiding.

This was ejectment in the Circuit Court of Greene county, by appellee against appellant and Thomas Lanham, to recover 240 acres of land, described as the E. ½, N. W. ¼, W. ½, N. E. ¼, and the W. ½, S. E. ¼, all in Sec. 26, T. 10 N., R. 11 W., 3d P. M., in which appellee claimed an estate for life. There was verdict and judgment for the plaintiff, and Mary B. Perry, defendant, appeals.

It is conceded, that the title was originally in Harriet Bowman, who died November 6, 1876, testate. The will of the said Harriet Bowman was duly probated, November 20, 1876. The will contains the following provisions: "subject to the restrictions following, I hereby give, grant, bequeath and devise all my property, both real and personal, to my beloved children, Mary Perry, Elizabeth Leman, Emily Bowman, Annie Vedder, Alvin. C. Bowman, Catherine Black, wife of Wm. Black, and familiarly known as Kate Black, Fannie Sharon, and Lucy A. Bowman, intending each to have a full and equal share of my real and personal estate; and to secure such equality in the final distribution of property among my said children, I direct that all advancements heretofore made by me, or my orders, to any of my said children, or which may be so made hereafter to any of said children, shall be accounted for and deducted from said shares respectively, as such amounts or sums, either in money or valuable property, shall finally appear in items of charges made by me, or by my orders, as against any of my said children."

Then follows the further provision: "It is further my will that certain real estate advanced by me to Alvin C. Bowman, Annie Vedder, Catherine Black, and Elizabeth Leman, separately and respectively, be by each of them held as a life estate, without power of sale or alienation by either of them, and that upon the death of either of them, the said estate so in their possession shall descend and be the property of the descendants of such deceased party. And further it is my will that in event of the death of any

one of my said eight children without issue, or in case the direct descendants of any one of such children aforesaid, shall die, that in either such case the share of such child shall revert to the survivors, of the eight direct legatees, of such as may be deceased, said shares when so reverting to be held by the several recipients subject to the above restrictions and limitations, it being my desire that all my property remain with my children or their descendants, and in no event become the property of strangers to my blood."
*   *   *   "And it is further my will that in each case where advancements have been made by me, or may hereafter be so made to any of my children, the same be by them held, together with whatever may be received by either of them, under this will, whether in real or personal property, free from all debts contracted or to be contracted by them or either of them, in order to more fully secure the same to them and their descendants."

There are no other provisions of the will in any wise affecting these devises.

It was agreed at the trial that appellee was the son of the testatrix, Harriet Bowman, and the Alvin C. Bowman referred to in her said will; and also, in a private book, kept by Harriet Bowman, the testatrix, in her life time, the lands in controversy were charged as an advancement to appellee. That such charge was made prior to the making of her will, July 28, 1874.

Other facts sufficiently appear in the opinion of the court.

Messrs. WITHERS & RAINEY, for appellant:

Harriet Bowman, by her last will, devised "certain lands" advanced by her to Alvin C. Bowman, and three others, to be held as a life estate. This will is all the evidence admissible on the question of title.

Although it is admitted in the record that Harriet Bowman charged these lands in a book as an advancement to Alvin C. Bowman, her will does not describe the land, or

any of the lands, and couples the devise to Alvin C. Bowman with her devises to others, and of other lands, making the devise *joint*, but severable possibly in equity.

The language of this will did not create a severance of the legal title between the parties named. A quit-claim deed from Annie Vedder, Catherine Black and Elizabeth Leman to Alvin C. Bowman was necessary before the legal title of the particular tracts in controversy would vest in him. Hence the court erred in instructing for the plaintiff, and in refusing instructions asked by the defendant on the trial below.

The main object of the constitutional provision in section 5 of article 9 of the constitution is, that the party in possession and the person in whose name listed, should be *notified* of the time of redemption, etc. *Garrick et al.* v. *Chamberlain*, 97 Ill. 637.

Mere informalities or variance in attempting to comply with the law in regard to notices, is not fatal. Cooley on Taxation, 329.

An unauthorized act by one assuming to be an agent for another may be ratified by the principal, and such ratification gives to the act the same effect as if it were previously duly authorized. *Flynn* v. *Railroad Co.*, 63 Iowa, 492; *Mason* v. *Caldwell*, 5 Gilm. 196; *Drakely* v. *Gregg*, 8 Wall. 242; *Rogers* v. *Kneeland*, 10 Wend. 218.

By taking the deed and the title it conveyed and possession of the land, Mary B. Perry ratified the acts of F. M. Roberts as her agent, in giving notices and making affidavit, and he thus became her agent at the time the affidavit was made, even if it be true that he had no authority to act for her at the time.

In this case, however, his affidavit and his acts, as shown by the notices he gave to Bowman and Lanham, are sufficient to reasonably establish the fact of his agency.

MR. MARK MEYERSTEIN, for appellee:

Under the provisions of the will of Harriet Bowman the lands involved in this suit are devised *alone* for life, and not jointly with others.

The provision of the will, "it is my further will, that certain real estate *advanced by me* to Alvin C. Bowman, Annie Vedder, Catherine Black and Elizabeth Leman *separately* and *respectively* be by each of them held as a life estate," etc., is not ambiguous, and unmistakably devises for life (*separately*) certain real estate advanced to appellee, Alvin C. Bowman.

The court properly excluded the tax deed from the jury.

The validity of the tax deed depends upon a *strict* compliance with the law.

It is incumbent upon the purchaser or his assignee in order to entitle him to a tax deed and to invest the county clerk with authority to execute the same, to show a *strict compliance* with sections 216 and 217 of the Revenue act. *Combs et al.* v. *Goff*, 127 Ill. 431.

The title to be made under a tax deed is *stricti juris.* Therefore a non-compliance with anything the law makes a condition precedent to the right to have a deed, *is fatal. Wisner et al.* v. *Chamberlin*, 117 Ill. 568.

The affidavit offered in evidence by appellant in support of the tax deed is fatally defective in many respects.

1st. The affidavit is made by one Fielden M. Roberts. The affidavit fails to show that he, as the *agent* of appellant, made this affidavit. This of itself we think fatal to the tax deed offered in evidence by appellant.

By section 217 of the Revenue act (Hurd's R. St. 1891, p. 1181), it is provided:

"Every such purchaser or assignee by himself or *agent*, shall, before he shall be entitled to a deed, make an affidavit of his having complied with the conditions of the fore-

PERRY *v.* BOWMAN. 31

Brief for the Appellee.    Opinion of the Court.

going section, stating *particularly the facts* relied on as such compliance,'' etc., etc.

It follows then that in this case the affidavit for the tax deed could only have been made by appellant or *her agent.*

The case of *Taylor* v. *Wright*, 121 Ill. 455, is directly in point. The court in that case holds that an affidavit for the purpose of obtaining a tax deed *"is fatally defective* if it fails to show that the person making it was the purchaser, his assignee, or his *agent."*

''The mere signing of the affiant's name, with the word *agent* after it, without stating of whom he was agent, will not meet the requirements of the law.''

Fielden M. Roberts, who made the affidavit in this case, did not even add the word ''Agent'' to his signature.

The affidavit fails to state in what manner notice was served upon defendant Lanham, the occupant of the land.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The contention of counsel for appellant, if we understand them, is, that by the will there was a joint devise of the land to the children of the testatrix named, and that each took an interest in the property in controversy, as tenants in common for their lives. This is, we think, a misapprehension. In construing the will, the intention of the testatrix, as derived from all its provisions, will control, and effect will be given to such intention when ascertained.

By the first clause of the will quoted, there is devised all of the property of testatrix, both real and personal, in equal shares to her eight children; ''and to secure such equality in the final distribution of property among her said children, the testatrix directs, 'that all advancements heretofore made by me, or my orders, to any of my said children, or which may be so made hereafter to any of said children, shall be accounted for and deducted from said shares respectively, as such amounts or sums, either in money or valuable property, shall finally appear in items of

charges made by me, or by my orders, against any of my said children.'" While, therefore, the devise was to her children equally, the sums of money or property, given to the children severally, in the life time of the testatrix and charged to them as an advancement, was to be deducted out of the share or portion, which the child or children, receiving the advancement, would otherwise receive of her estate,—clearly evincing thereby an intention, that the advancements made should be held in severalty by her children, to whom they were severally given. And, lest there should be any misapprehension on this subject, the testatrix immediately follows the general granting clause with the further provision: "It is further my will that certain real estate advanced by me to Alvin C. Bowman, Annie Vedder, Catherine Black and Elizabeth Leman, separately and respectively, be by each of them held as a life estate, without power of sale," etc. It is apparent that the advancement made of "certain real estate," to the four children named, was "separately and respectively," and by each of them, to be held for life, etc. And the testatrix subsequently adds the further provision: "And it is my further will, that in each case where advancements have been made by me, or may hereafter be so made to any of my children, the same be by them held, together with whatever may be received by either of them, under this will, * * * free from debts," etc.

It appears that a part of the real estate in controversy was purchased by Mrs. Bowman in 1870 and the balance in 1873, and that immediately after the purchases, she put appellee in possession of the land, and he remained in possession as owner until after her death, and until dispossessed in the manner hereinafter stated.

By the second clause of the will, as we have seen, it is provided, that "certain real estate advanced by me to Alvin C. Bowman, Annie Vedder, Catherine Black and Elizabeth Leman, separately and respectively, be by each of them

held" for life, etc., and by the former clause of the will, that such advancements were to be deducted out of the share devised to such children respectively. To determine what was intended by the devise for life of certain lands advanced, it becomes necessary to ascertain whether advancements had been made to appellee, to which the devise in the second clause could be referred. In no other way could the language be made intelligible or effective. While extrinsic evidence is not admissible to import into the will an intention not expressed, it is competent to show the fact or circumstance referred to by the testator, when necessary to identify the subject of disposition or object of the testator's bounty. In construing wills, the court should always endeavor to read its provisions in the sense in which they were employed by the testator, and for this purpose, may consider it in the light of the facts and circumstances surrounding the testator at the time the will was made. Wigram on Wills (2 Am. Ed.), 161; 2 Jarman on Wills, 733; *Decker* v. *Decker*, 121 Ill. 341; *Bingle* v. *Volz et al.*, 142 id. 214; cases cited.

Here, proof of advancement of land to appellee became necessary to point the devise and render it intelligible. Such proof contravenes no provision of the will, nor imports into it any intention not expressed by the testatrix, but gives effect to the devise by pointing out the subject referred to as "certain real estate advanced by me." For this purpose it was clearly competent. The testatrix, as we have seen, had, before the making of the will, made the advancement to appellee of the land in question; had charged the same to him as such, and put him in possession as owner. It therefore becomes definite and certain that the devise was of a life estate in the lands in controversy to appellee in severalty, and not jointly with the devisees named, and vested in appellee an estate for life in all said lands.

3—151 ILL.

The defendant offered in evidence a tax deed, as par-
amount title, made February 2, 1886, by the clerk of the
County Court of Greene county, to appellant, Mary B.
Perry, for all of said lands, issued in pursuance of sale of
said lands, for non-payment of taxes, made on June 18,
1883.   Upon acquiring said tax deed, the defendant Lan-
ham, who had been the tenant of appellee, in possession of
said lands for many years, refused to pay rent to appellee,
and claimed thereafter to hold as tenant of appellant,
Perry.   Waiving the question as to whether she could thus
acquire possession and hold it, even under paramount title,
or whether the previous possesion of appellee would enable
him to maintain ejectment against one having no title, we
may consider the validity of the tax deed which the court
excluded.   To sustain that deed, appellant introduced in
evidence the records and files, showing the precedent steps
taken to perfect title under the tax sale.   There are a num-
ber of objections, one of which will be enough for us to
consider.   The tracts of land were severally bid off by W.
D. Roberts, June 18, 1883.   April 30, 1884, said Roberts
assigned the certificate of purchase to Mary B. Perry.
The affidavit, presented to the county clerk, as showing
compliance with section 216 of the Revenue act is fatally
defective.   Section 217 provides: ''Every such purchaser
or assignee, by himself or agent, shall, before he shall be
entitled to a deed, make an affidavit of his having com-
plied with the conditions of the foregoing section, stating
particularly the facts relied on as such compliance, which
affidavit shall be delivered to the person authorized by law
to execute such tax deed   *   *   *   and which   *   *   *
affidavit shall be *prima facie* evidence that such notice has
been given.''

The requirement that such affidavit shall be made by the
purchaser or assignee, by himself or agent, is mandatory.
By section 216 of the act it is provided that hereafter no
purchaser, or assignee of such purchaser, at any tax sale,

shall be entitled to a deed for the lands or lots purchased, until he shall have complied with the conditions of that section following. That is, that he shall serve, or cause to be served, a notice of such purchase, as prescribed by the statute, on every person in actual possession or occupancy of the land or lot, and also upon the person in whose name taxed or specially assessed, if upon diligent inquiry he or she can be found in the county, and prescribing the form and time of service of the notice, etc. In *Taylor* v. *Wright*, 121 Ill. 467, it was *held* that the affidavit must be made by the purchaser or assignee, by himself or agent. And this would seem to be so from the plain reading of the statute.

In this case, the affidavit was not made by the purchaser at the tax sale, or by the assignee of the certificate of purchase, but by a stranger to the transaction, who does not even purport to act as the agent either of the purchaser or assignee. Fielden M. Roberts makes the affidavit for and on his own behalf, that "this affiant served, or caused to be served, written or printed, or partly written and partly printed, notices," etc. It then proceeds: "Said notices stated when he" (affiant) "purchased the real estate, in whose name taxed, the description of the lands purchased, for what year taxed or specially assessed, and when the time of redemption would expire," and further states: "and that he, this affiant, relies on the facts stated in this affidavit, and on compliance with the provisions of the Constitution and laws of the State of Illinois in this behalf," etc. Further quotation from the affidavit will be unnecessary. There is no pretense that there was any mistake in the name of the person making the affidavit. It is manifest that the affiant did not purchase the land at the tax sale, but that the purchase was made by W. D. Roberts. It is not shown in the affidavit that the affiant was acting, or claiming to act, for and on behalf either of the purchaser or the assignee of the certificate of purchase. Evidence was

offered, tending to show that Fielden M. Roberts was, in fact, the agent of said Mary B. Perry, in respect of perfecting said tax title, and excluded.

It was held in *Gage* v. *Mayer*, 117 Ill. 632, that parol evidence cannot be received to supply defects or omissions in the affidavit filed in pursuance of section 217 of the Revenue act, and if the affidavit does not contain the facts necessary to authorize the clerk to act, the deed is unauthorized and nugatory, regardless of what the real fact is. And the same was in effect held in *Combs et al.* v. *Goff*, 127 Ill. 431. To give jurisdiction to the county clerk to act in the matter of execution of the deed, it is necessary that an affidavit should be presented, in conformity with section 217, showing strict compliance with section 216. Otherwise, the act of the clerk would be unauthorized and void. *Hughes* v. *Carne*, 135 Ill. 519; *Gage* v. *Hervey*, 111 id. 305; *Davis* v. *Gossnell*, 113 id. 121.

The court did not err, therefore, in rejecting the offered evidence, or in refusing to admit the deed in evidence as title. Numerous other errors are pointed out in respect of the tax deed, but it is unnecessary, in view of what has been said, to consider them.

We are of opinion that the plaintiff showed that he was seized of an estate for his life in the premises mentioned in the declaration, and was entitled, as against the defendants, to recover the same. Finding no error in the record, the judgment will be affirmed. The death of appellee having been suggested of record in this cause, it is ordered that the judgment of affirmance be entered now as of the day of the submission of this cause in this court, to-wit: June 10, 1892.      *Judgment affirmed.*