JAMES A. WALLACE et al. and C. E. CHAMBERLAIN, Appellees, vs. GEORGE L. NOLAND et al. Appellants.

*Opinion filed October 28, 1910.*

1. RES JUDICATA—*extent to which construction of will is res judicata.* If the Supreme Court has construed the word "heirs" in a will to mean "children" and not heirs generally, such construction is binding on a subsequent appeal involving the same clause of the will, even though it was not disclosed to the court upon the first appeal that there were adopted children to be considered; but in such case the question whether the adopted children come within the meaning of "children" is not *res judicata.*

2. WILLS—*state of law at time will was made is to be considered.* In construing language of a will capable of more than one interpretation the circumstances and environment of the testator at the time the will was executed, including the state of the law at that time, may be considered.

3. SAME—*each will must be considered in the light of its own phraseology.* Within the settled general rules and principles of law each will must be considered in the light of its own phraseology and the facts and circumstances surrounding the testator at the time the will was made, and for that reason the decisions in will construction cases are of less value as precedents than the decisions in other classes of cases.

4. SAME—*word "heirs," in its comprehensive sense, will include adopted children.* The word "heirs," in its general and comprehensive sense, includes all who stand in a relation to the ancestor that will entitle them, under the law, to inherit at his death, and this includes adopted children.

5. SAME—*when adopted children will not take under a will.*
Adopted children are not within the meaning of the word "heirs"
in a clause of a will devising land to the testator's son but should
he die without "heirs" then the property to go to named persons,
where Supreme Court has previously construed the word "heirs"
to mean children, and where, at the time the will was made and
at the time the testator died, there was no law in the State giving
adoped children the right to inherit. (*Butterfield* v. *Sawyer*, 187
Ill. 598, distinguished.)

APPEAL from the Circuit Court of St. Clair county; the
Hon. GEORGE A. CROW, Judge, presiding.

WILBUR N. HORNER, JAMES M. DILL, and ALBERT M.
KALES, for appellants:

By the proper construction of the will of James W.
Bradsby, the father, and especially the second clause there-
of, James A. Bradsby, his son, had a fee simple in the
premises in question, subject to an executory devise over.
*Bradsby* v. *Wallace,* 202 Ill. 239; Rev. Stat. 1874, chap. 30,
sec. 13; *Smith* v. *Kimbell,* 153 Ill. 368; *Abbott* v. *Essex
County,* 18 How. 202; *Piatt* v *Sinton,* 37 Ohio St. 353.

The gift over in case James A. Bradsby dies "leaving
no heirs" is a contingent executory devise not vested. *Gol-
laday* v. *Knock,* 235 Ill. 412; Gray's Rule Against Perpetui-
ties; (2d ed.) sec. 114; Kales on Future Interests, sec. 178.

The appellants, the Nolands, are the legally adopted
children of James A. Bradsby, the son, and he died leaving
them surviving as his only heirs-at-law by descent as dis-
tinguished from collateral heirs. Rev. Stat. 1874, chap. 4,
sec. 5.

By the proper construction of the will of James W.
Bradsby, the father, and especially the second clause there-
of, the fee of James A. Bradsby, the son, was never di-
vested because he did not die "leaving no issue," but, on
the contrary, he died "leaving heirs," within the meaning
of the will of his father. *Butterfield* v. *Sawyer,* 187 Ill.
598, is conclusive of the above proposition and is fully sup-

ported by the authorities at large.  *McGunnigle* v. *McKee,* 77 Pa. St. 81; *Johnson's Appeal,* 88 id. 346.

The Adoption act expressly requires that an adopted child shall have all the rights which a child born in lawful wedlock would have.  Hence it imperatively requires, whether the testator meant it or not, that the adopted child be included, and in order to exclude the adopted child the testator must explicitly so indicate his intention.  Rev. Stat. 1874, chap. 4, sec. 5; *Atchison* v. *Atchison,* 89 Ky. 488; *Markoever* v. *Krauss,* 132 Ind. 294; *Flannigan* v. *Howard,* 200 Ill. 396.

When the testator used the word "heirs" he expressly meant to include any person whom the law made an heir at the time when the heirship was to be ascertained, regardless of who that person might be or by what process he became an heir.  *Blodgett* v. *Stowell,* 189 Mass. 142; *McGunnigle* v. *McKee,* 77 Pa. St. 81; *Sewall* v. *Roberts,* 115 Mass. 262; *Butterfield* v. *Sawyer,* 187 Ill. 598.

The objection that the word "heirs" in the will of James W. Bradsby could not mean heirs by adoption because the testator died before any general Adoption act was in force in Illinois cannot prevail.  *Butterfield* v. *Sawyer,* 187 Ill. 598; *Sayles* v. *Christy,* 187 id. 420; *Sewall* v. *Roberts,* 115 Mass. 262; *McGunnigle* v. *McKee,* 77 Pa. St. 81; *Miller's Appeal,* 52 id. 113; *McNeer* v. *McNeer,* 142 Ill. 388; *Jenkins* v. *Jenkins,* 144 id. 274; *Henson* v. *Moore,* 104 id. 403; *Mead* v. *Mitchell,* 17 N. Y. 210; *Blodgett* v. *Stowell,* 189 Mass. 142.

The objection that the word "heirs," as used in the will of James W. Bradsby, means "heirs of the body," and so the event of James A. Bradsby dying ; ' leaving adopted children is expressly excluded, cannot ,          *Butterfield* v. *Sawyer,* 187 Ill. 598.

The case under consideration must be k   ntirely separate and distinct from the case where th  question is whether the adopted child would come within the meaning

of the term "child" or "children" in a will or deed or insurance policy. But nevertheless, under our Adoption act and upon authority and principle, it is submitted that the adopted child would be included in the term "child" or "children" if that word were used. *Sewall* v. *Roberts,* 115 Mass. 262; Rev. Stat. 1874, chap. 4, sec. 5; *Tirrell* v. *Bacon,* 3 Fed. Rep. 62; *Hartwell* v. *Tefft,* 19 R. I. 644; *Bray* v. *Miles,* 23 Ind. App. 432; *Miller's Appeal,* 52 Pa. St. 113.

LOUIS ZERWECK, J. M. HAMILL, L. D. TURNER, and R. D. W. HOLDER, for appellees:

Where some specific fact or question has been adjudicated and determined in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not. *Hanna* v. *Read,* 102 Ill. 596; 1 VanFleet on Former Adjudication, sec. 1.

The word "heirs," as used in the second clause of the will of James W. Bradsby, has been construed by this court to mean "children," and as to that feature of this case the question is *res judicata. Bradsby* v. *Wallace,* 202 Ill. 239; 1 VanFleet on Former Adjudication, sec. 1.

Under said will James A. Bradsby took a base determinable fee, which would determine upon his death without leaving children. This feature of the case is *res judicata. Bradsby* v. *Wallace,* 202 Ill. 239; 1 VanFleet on Former Adjudication, sec. 1.

Upon the death of James A. Bradsby leaving no children the fee simple title to the land described in said clause 2 vested in the children and heirs of William B. Bradsby, Mary Wallace and Paulina North. This question is *res judicata. Bradsby* v. *Wallace,* 202 Ill. 239; 1 VanFleet on Former Adjudication, sec. 1.

Appellants claim as adopted children and heirs of James A. and Priscilla Bradsby. If they take anything from their adopting parents they take by virtue of the privity between ancestor and heir. Hawes on Parties to Actions, sec. 7; 2 VanFleet on Former Adjudication, sec. 469; *Sharky* v. *Bankston*, 30 La. 191.

The circuit court correctly construed the words in the second clause of James W. Bradsby's will, "leaving no heirs," to mean "no children." *Summers* v. *Smith*, 127 Ill. 651; *Griswold* v. *Hicks*, 132 id. 494; *Smith* v. *Kimbell*, 153 id. 368; *Bradsby* v. *Wallace*, 202 id. 239.

The circuit court properly construed the word "children," as used in this connection, to mean children of the body of James A. Bradsby and not his adopted children. 2 Jarman on Wills, (5th Am. ed.) chap. 30; *Arnold* v. *Alden*, 173 Ill. 229; *Flannigan* v. *Howard*, 200 id. 401; *Schaefer* v. *Eneu*, 54 Pa. St. 304; *Keegan* v. *Geraghty*, 101 Ill. 26; *Jenkins* v. *Jenkins*, 64 N. H. 407; *Collins* v. *Capps*, 235 Ill. 560; *Haffner* v. *Custer*, 237 id. 64.

The term "children," as defined generally, does not include adopted children. When not used in a figurative sense it means the immediate issue of a man or woman. *Smith* v. *Chapman*, Hen. & M. 240; 2 Words and Phrases, 1115.

Adopted children are not children of the person by whom adopted. *Schaefer* v. *Eneu*, 54 Pa. St. 304.

The word "children," according to its ordinary meaning with respect to parentage, means sons and daughters. *Miller* v. *Finegan*, 26 Fla. 29.

Giving an adopted son a right to inherit does not make him a son in fact, and he has no higher merit than collateral blood relations of the deceased, and is not at all to be regarded as a son in fact. *Commonwealth* v. *Nancrede*, 32 Pa. St. 389.

The word "heirs" will be construed to mean children when from the whole will such appears to have been the in-

tention of the testator. *Thurber* v. *Chambers,* 66 N. Y. 42; *Taggart* v. *Murray,* 53 id. 233.

The testator employed the word "heirs" in its ordinary common acceptation, as meaning "children," "issue," "heirs of the body" or "lineal descendants," and not in its technical or legal sense. *Johnson* v. *Brasington,* 86 Hun, 106.

Mr. JUSTICE FARMER delivered the opinion of the court:

This cause is a consolidation of two suits for the partition of the same land. Both bills were filed the same day. In the first bill filed, appellees James A. Wallace *et al.* were complainants and appellee C. E. Chamberlain was defendant. Appellants were not parties to the bill in that case. Chamberlain was the complainant in the other bill, and, in addition to the parties complainant and defendant to the bill filed by Wallace, he made appellants defendants to the bill filed by him. The two cases were consolidated by order of the court and appellants answered both bills. They also filed a cross-bill claiming to be the sole owners, in fee simple, of the premises sought to be partitioned. After answers and replications had been filed the cause was referred to a special master to take and report the evidence but not his conclusions.

James W. Bradsby was in his lifetime the owner of the land in controversy. He died testate May 4, 1866, leaving surviving him two sons, James A. Bradsby and William B. Bradsby, two daughters, Mary Wallace and Paulina North, and three grandchildren, who were the children of a deceased daughter of the testator. By his will James W. Bradsby divided his property among his children and grandchildren. The land in controversy was disposed of by the second clause of the will, and the rights of the parties to this suit in the land depend upon the construction to be given to that clause. So much of said clause as is necessary to an understanding of the question involved is as follows: "I give, devise and bequeath unto my son James

A. Bradsby the following described real estate, to-wit, (describing real estate,) * * * but should the said James A. Bradsby die leaving no heirs, then the said devised property above described to descend to William B. Bradsby, Mary Wallace and Paulina North." James A. Bradsby married but no children were born of the marriage, and he died in December, 1909. In 1889, by proceedings in the county court of St. Clair county, he adopted appellants, five in number. By virtue of said adoption they claimed to be the heirs of James A. Bradsby, and as such entitled to the land. Appellees claim that James A. Bradsby took a base fee, determinable upon his dying and leaving no children born to him in lawful wedlock; that he died leaving no persons of that description; that the devise over took effect, and they are all heirs of William B. Bradsby, Mary Wallace and Paulina North, all three of whom are dead, except Chamberlain, who claims an interest by conveyance from two of the heirs of William B. Bradsby. On the hearing the court dismissed the cross-bill of appellants for want of equity, decreed partition among appellees and appointed commissioners to make partition. Complainants in the cross-bill have appealed from that decree to this court.

The construction of the second clause of the will was before this court on a former occasion and will be found reported as *Bradsby* v. *Wallace*, 202 Ill. 239. Appellants contend that the questions raised in this case were not involved in or decided in that case, while appellees contend that that case is *res judicata* of every question involved in this case. In our opinion neither of these contentions is correct. In the former case the bill was filed by James A. Bradsby to settle and quiet his title. The bill alleged that James A. Bradsby and his wife had no children and had reached ages where there was no possibility of any children being born to them; that the heirs of William B. Bradsby, Mary Wallace and Paulina North, the latter all being dead,

claimed James A. Bradsby's title was a life estate or a determinable fee, and that upon his death without children the fee would go to them. The bill alleged that James A. Bradsby desired to sell the land; that he was the owner of it in fee simple, and prayed a decree so finding and ordering. The bill under which that case was tried made no reference to the adoption of any children by James A. Bradsby although they had been adopted long before the bill was filed, and the court was not informed of the adoption of appellants. The theory of the bill is stated by the court on page 244, as follows: "The question raised is whether the provision of the second paragraph, that if James A. Bradsby should die leaving no heirs the property therein devised should descend to William B. Bradsby, Mary Wallace and Paulina North, was designed by the testator to prevent a lapse of the devise in case of the death of the devisee, James A. Bradsby, in the lifetime of the testator, and was intended as a provision for the substitution of William B. Bradsby, Mary Wallace and Paulina North upon the happening of such event, or whether it was operative as an executory devise to the testator's other children if James A. Bradsby should die leaving no children." In passing upon that question two questions involved in this case were decided and we think are not open for consideration now, viz., that the word "heirs" in the second clause of the will meant "children," and that the estate taken by James A. Bradsby under the will was a fee, determinable upon his death leaving no children. In affirming the construction placed upon the will by the trial court this court said (p. 248): "We are of the opinion that the circuit court interpreted and construed the will of James W. Bradsby in accordance with his intentions, and that the will gave to James A. Bradsby a fee which would terminate if he should die without leaving children, in which event the fee simple title would vest in William B. Bradsby, Mary Wallace and Paulina North and their heirs." The

question whether the adopted children of James A. Bradsby come within the meaning of the will, or whether only such children as might be born to James A. Bradsby in lawful wedlock were intended by the testator, was not adjudicated in the former case but is open for determination in this case, and we think it is the only question that can properly be determined by us. We therefore pass over the argument of counsel on both sides upon the questions as to the character of the estate James A. Bradsby took, and whether the word "heirs" meant "children" or "heirs generally."

Appellants contend that if the word "heirs" is construed to mean "children" it does not mean children by birth; that under our Adoption act an adopted child is given all the rights to which a child born in lawful wedlock is entitled; that appellants would be included with children by birth of James A. Bradsby under the law, in the absence of language showing a contrary intention. Appellees claim that only children of the body of James A. Bradsby were meant by the will; that children by adoption are not included, and that upon the death of James A. Bradsby leaving no persons answering the description in the will, the devise over took effect and the title devolved upon them.

If the decision in *Bradsby* v. *Wallace, supra,* that the word "heirs" in the second clause of the will meant "children" is binding upon us now,—and we think it is,—we are to treat the will the same as if the word "children" had been written in it instead of "heirs." Very able briefs on both sides, citing, reviewing and distinguishing many authorities, have been filed, and we have examined them with the care that the importance of the case to the parties interested requires.

It is very forcibly argued by appellants that as by our Statute of Adoption an adopted child is "deemed for the purposes of inheritance  *  *  *  and other legal consequences  *  *  *  the child of the parents by adoption the same as if he had been born to them in lawful wedlock,"

appellants, who have been lawfully adopted, are included
in the second clause of the will whether the testator so in-
tended or not, and it is said this construction is imperative
unless the testator used language clearly indicating that he
did not intend to include adopted children. *Butterfield* v.
*Sawyer,* 187 Ill. 598, is claimed to be decisive of the case,
but we do not so consider it. In that case there was a con-
veyance by the father to his daughter, Adeline Butterfield,
of a life estate, with remainder to her child or children
living at her death, and in case there should be no such
child or children at her death, "then to the heirs generally
of the said Adeline Butterfield forever," except that no
part was to go to her brother, George Butterfield. Adeline
Butterfield married, but her husband died leaving her a
widow with no child or children. After the death of her
husband she adopted a child by proper proceedings in the
county court of Cook county. Upon the death of the widow
the adopted child claimed the premises and his claim was
contested by relatives by blood of the widow, who con-
tended they were entitled to the property as "heirs gener-
ally" of the widow, and that an adopted child was not
embraced in this description of the persons who were to
take at the death of said Adeline Butterfield leaving no
child or children. The court held that "heirs generally" of
the grantee, as used in the deed, meant the person upon
whom the law impressed the character of heir of Adeline
Butterfield at the time of her death; that by the statute
an adopted child is heir of the adopting parent, and the
adopted child took the fee to the exclusion of collateral
kin. It was said that there was nothing to indicate that
the grantor in the deed used the language "heirs generally"
in any other than its commonly accepted legal sense.

It will be noted that the instrument construed by the
court in the *Butterfield case* was a deed, and less latitude
is allowed in the construction of deeds than is allowed in
the construction of wills. But the chief distinction between

that case and the one at bar is, that in the *Butterfield case* the word "heirs" was used in its general and comprehensive sense, while in the case at bar we are to treat the will the same as if it had used the term "children." The word "heirs" will include all who stand in a relation to the ancestor that will entitle them to inherit upon his death. This would include an adopted child, for the statute puts him on an equality with children by birth for the purpose of inheriting from the adopting parent. In other respects than the right of inheriting from the adopting parent the adopted child is unlike children by birth. By adoption he acquires no right to inherit from anyone else than the adopting parent. (*Keegan* v. *Geraghty,* 101 Ill. 26.) In that case it was said adoption creates an artificial relation between the parties to the transaction. "As we construe the statute, as between the parties to the transaction the adopted child is deemed, for the purpose of inheritance from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock." It has been said in a number of cases that an adopted child is regarded, in law, as a child only for the purpose of inheritance from the adopting parent, and not the child, in fact, of such adopting parent. (*Schaefer* v. *Eneu,* 54 Pa. St. 304; *Commonwealth* v. *Nancrede,* 32 id. 389; *Hockaday* v. *Lynn,* 200 Mo. 456; 118 Am. St. 672.) In *McGunnigle* v. *McKee,* 77 Pa. St. 81, the devise was to the testator's son, Thomas, "and his heirs and assigns," with a limitation over in case the son "should die without an heir." The son left an illegitimate daughter, who had been legitimatized before his death by special act of the legislature, which provided that she should have all the rights and privileges and be capable of inheriting any estate as fully as if she had been born in lawful wedlock. The court held that the legitimatized daughter was an heir and entitled to the property. In *Johnson's Appeal,* 88 Pa. St. 346, property was devised to trustees in trust for a son during his life and at his death

to be assigned and conveyed to such person or persons as would be entitled to it by law if he had died seized of a fee simple estate. It was held an adopted child took the property. In all three of the cases referred to, the adopted child filled the description of "heir" as used in the deed or will, and the grantor or testator left it to the law to determine who the heir was at the death of the first taker.

Other cases are cited and relied upon by appellants, but we do not consider them controlling in the decision of this case. In our opinion more aid in the construction of the will is to be derived from a resort to the fundamental rule that the intention of the testator is to be ascertained and given effect if not contrary to law, than is afforded by adjudicated cases. In determining the intention of the testator in the use of language capable of more than one construction, the circumstances and environment of the testator at the time of the execution of the will, including the state of the law at that time, may be considered. "In construing wills the court should always endeavor to read its provisions in the sense in which they were employed by the testator, and for this purpose may consider it in the light of the facts and circumstances surrounding the testator at the time the will was made." (*Perry* v. *Bowman,* 151 Ill. 25.) "The state of the law at the time of the execution of a will often affords material assistance in arriving at the intentions of the testator when they would otherwise be doubtful." (*Carpenter* v. *Browning,* 98 Ill. 282.) As the language of different wills is so varied and the circumstances surrounding the testators are so different, decisions in will construction cases are of less value as guides or authority than is the case upon almost any other subject of the law. Aside from settled general rules and principles, each will must be construed in the light of its own peculiar phraseology and the facts and circumstances surrounding the testator at the time of its execution. If James W. Bradsby had said in his will that he intended

the devise over should be defeated only in case James A. Bradsby left children born of his body, it would have been a valid provision and effect would have been required to be given to it.  If such was his intention and it clearly appears from the will itself and other circumstances entitled to be considered, it is as much entitled to be given effect as if the testator had expressed his intention in more explicit terms.  Some of the things in James W. Bradsby's mind at the time he made his will are so clear from the language used by him as not to be the subject of controversy.  He did not intend his son James A. Bradsby to have an absolute, unconditional estate in fee in the land devised by the second clause of the will.  He did not intend to vest in his son an estate that would upon his death go by inheritance to his heirs in general.  The fee was to become absolute only in the event the son left children, and children only could take it by inheritance from him upon his death.  If he left no children the testator directed that the title in 'fee should go to his other son and two daughters.  Apparently he did not intend the land to pass to strangers to his blood by the failure of James A. Bradsby to leave children by birth.  At the time the will was executed and at the time the testator died there was no statute in existence, and never had been one in this State, authorizing the adoption of a child and giving it the right to inherit from the adopting parent.  It would seem plain, then, the testator could not have had in mind any children of his son except such as might be born of his body.  The importance of the circumstance that when the will was executed there was no adoption act in this State is not affected by the fact that it was held in the *Butterfield case* that because the deed was made before there was any adoption act in existence constituted no valid objection to the adopted child taking the land.  The distinction between that case and this one in that respect is obvious.  In the *Butterfield case* the deed directed that if Adeline Butterfield died leav-

ing no child or children the fee should go to and vest in her "heirs generally." The law fixes the persons who are to be considered heirs of a deceased person, and the grantor in the deed to Adeline Butterfield not indicating any intention to limit the estate to any particular class of heirs, his intention was construed to be that the land should go to anyone whom the law made an heir of Adeline Butterfield. In the case at bar there was no adoption statute, when the will was made, giving a man the right to adopt the child of someone else as his own child, and the possibility that such a thing might be done was not within the testator's reasonable contemplation. James W. Bradsby no doubt intended that the fee should become absolute if James A. Bradsby died leaving any children, but in the state of the law at the time he made his will he could only have intended children born of the body and not children who might be created by law.

We are of opinion the decree of the circuit court was correct, and it is affirmed.          *Decree affirmed.*