GEORGE CARPENTER.

*v.*

MARGARET BROWNING *et al.*

*Filed at Springfield March 21, 1881.*

1. WILL—*construed as whether creating an active trust or a naked one, or mere use.* A devise, taking effect before the Married Woman's act of 1861, for an equal division of all the testator's estate among his children, except that he devised to a son the portions of his estate, real and personal, which would otherwise have gone to his daughters, naming them, in trust for the sole and separate use of each of the testator's daughters and their heirs, free from the control of the husbands they then had or might thereafter have, free and clear from any debt or contract of said husbands,—the rents, issues and profits to be paid to his daughters respectively, creates in the son an active trust, passing the legal estate and entire possession and control of the lands of the daughters to him, and by implication requires him to pay the rents, issues and profits to the daughters of the testator.

2. SAME—*construed with reference to the law when it took effect.* The state of the law at the time of the execution of a will often affords material assistance in arriving at the intention of the testator, when it would otherwise be doubtful, and the rights of the parties taking under a will are always to be determined by the law as it existed at the time the will took effect.

3. TRUST—*whether satisfied or changed by Married Woman's act of 1861.* Where a testator, by a devise which took effect before the Married Woman's act of 1861, devised the real and personal estate given by him to a daughter, a married woman, to his son in trust for the sole and separate use of the daughter and her heirs, free from the control of her husband, and from his debts and contracts, it was held that the Married Woman's act enlarging the property rights of married women, did not have the effect of satisfying the objects and purposes of the trust, so as to warrant a court of equity in directing a conveyance by the trustee to the daughter, but that the trust would still exist as originally created.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. STUART, EDWARDS & BROWN, for the appellant:

If the trust in George Carpenter was naked and passive, the legal title by operation of the statute vested in Margaret

Browning, and there is no cloud upon her title to be removed. The demurrer to the bill should have been sustained.

But the trust is not a mere naked use. The intention° of the testator is manifest that the control and possession of the land should be and remain in the appellant, and that he should collect the rents and pay them over to the *cestui qui trust.* See *Kirkland* v. *Cox,* 94 Ill. 411.

The will is to be construed by the law as it stood in 1859, unaffected by any change in relation to the rights of married women.

Mr. J. H. MATHENY, Jr., for the appellees:

Where an estate is conveyed to one person simply for the use of another, or with the intent that the latter shall have the rents, issues and profits, the conveyance creates an use which the statute executes, for in such case the trustee has no duty to perform with respect to the estate. *Meacham* v. *Steele,* 93 Ill. 146.

The object of this trust has been performed by subsequent legislation, and it continues in equity no longer than the thing sought to be secured by the trust demands. *Kœnig's Appeal,* 57 Pa. St. 352; *Parker* v. *Converse,* 5 Gray, 336; *French* v. *Edwards,* 21 Wall. 147; *Harris* v. *Cornell,* 80 Ill. 67; *McNab* v. *Young,* 81 id. 11; *Meacham* v. *Steele,* 93 id. 145.

If the legal title vested in the trustee, and the trust subsequently became a use subject to the statute, a conveyance is necessary and proper. *Kirkland* v. *Cox,* 94 Ill. 401.

Where an active trust has been accomplished, it is the duty of the trustee to execute a conveyance. Perry on Trusts, sec. 520. And in case of refusal he is responsible for costs. Ibid; *Key* v. *Scates,* 37 Pa. St. 31.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a proceeding in chancery, instituted in the Sangamon circuit court, by Margaret Browning and William

Browning, her husband, for the purpose of establishing in her the legal title to certain real estate, and of removing what is claimed to be a cloud upon it.

The interest which Mrs. Browning has in the land in question, whether the title be legal or equitable, is derived through the last will and testament of her father, William Carpenter. The clause in the will through which this interest is acquired, and the only one that is material to the present controversy, is as follows:

" I devise that all my estate, real and personal, descend and be distributed in manner directed by law, with the following exception, to-wit: That I devise to my son, George Carpenter, the portions of my estate, real and personal, which would otherwise go to my daughters, Elizabeth Cobb, Margaret Browning, Sarah Jane Carpenter and Mary Ellen Carpenter, in trust, for the sole and separate use of each of my said daughters respectively and their heirs, free from any control of the husbands they may now have, or may hereafter have, and free and clear from any debt or contract of said husbands, the rents, issues and profits to be paid to my said daughters respectively."

The will was made on the 23d of August, 1859, and the testator died on the 30th of the same month. The bill, after setting forth this provision of the will, proceeds to charge that the trust created by the will was " a naked use, imposing no duties, payment of debts or taxes, control or otherwise," on said trustee; " that ever since the partition aforesaid the said Margaret has been in possession of said lands and managed the same, and collected the rents and profits thereof, and the said trust and trustee have been wholly passive; that by the laws of this State the legal title to said lands has become vested in Margaret; that the said trust estate is a cloud upon her title and tends to depreciate the value and hinder the sale thereof; that they have frequently applied to the said George Carpenter to clear up said title and remove the said cloud by a conveyance of the said property to the said Mar-

garet, but that he has refused so to do." The bill then prays "that the said title of the said George be set aside and declared null and void, and that he be required to make a proper deed of conveyance to Margaret, and for general relief." George Carpenter, the trustee, interposed a general demurrer to the bill, which was overruled by the court; and not answering further, a final decree was entered by the court in conformity with the prayer of the bill, and the trustee thereupon appealed to this court.

In giving a construction to the will, through which both parties claim, and in determining their respective rights under it, we must look mainly to the law as it existed at the time it was executed, and also at the time it went into effect. The state of the law at the time of the execution of a will often affords material assistance in arriving at the intentions of the testator, when they would otherwise be doubtful, and the rights of the parties taking under one are always to be determined by the law as it existed at the time it took effect, or, in other words, at the time of the testator's death. When the present will was executed, and went into effect, the law gave to the husband in right of his wife a freehold estate in her lands during the marriage, by virtue of which he was entitled to their exclusive possession, and the entire rents and profits thereof. He could sell or otherwise dispose of them as he pleased, without her consent, and they were liable to be taken in execution for his individual debts. This being the state of the law at the time of the execution of the will, it was doubtless the intention of the testator to so dispose of the land as to place it not only beyond the legal control of the husband, but also beyond his power and influence, so far as that could be accomplished. Hence the conveyance was made to the trustee in the manner we have seen.

That the trust created by the will was originally what is known as an active trust, does not admit of a reasonable doubt. The land is given to the trustee for the sole and separate use of Mrs. Browning and her heirs, free from any

control of her then or any future husband, and free and
clear from any of his debts or contracts, and the rents, issues
and profits of the same are required to be paid to her. It is
true that it is not stated in express terms that the rents and
profits are to be paid to her by the trustee, but that is evi-
dently what is meant. The legal estate and entire possession
and control of the land having been given to the trustee, no
one else could lawfully pay them to her but him, or some one
acting for or through him, which, in contemplation of law,
would be a payment by himself. *Qui facit per alium facit
per se.*

But it is, in effect, admitted by appellees, in the argument,
that the trust, in its inception, was an active trust, but claimed
that it has ceased to be such by reason of subsequent events.
Indeed, there is no other possible theory upon which the bill
could be maintained. For, if the supposed trust is simply an
executed use that took effect as such at the time of the testa-
tor's death, we are not aware of any principle by which appel-
lees can treat the will as a cloud upon Mrs. Browning's title.
We are confident no precedent can be found where a bill has
been sustained upon such a state of facts.

It is true that the express averments in the bill are incon-
sistent with the theory that the trust was an active one in its
inception, and if the case turned upon them alone, the want
of equity in the bill would be too palpable to admit of serious
consideration. But, inasmuch as the provision of the will is
set out *in hæc verba* in the bill, so the court can determine
for itself whether the trust was, in its origin, an active one,
or an executed use,—it becomes purely a question of construc-
tion for the court.

The real question, therefore, in the case is whether the act
of 1861, enlarging the property rights of married women, has
had the effect of fully satisfying the objects and purposes of
the trust so as to warrant a court of equity in directing a con-
veyance of the estate to Mrs. Browning. We confess we are
unable to discover upon what principle the statute in ques-

tion could have such an effect. It was not the intention of the legislature, as this court has, in effect, often held, in passing the Married Women's act, to at all disturb or affect in any manner existing property rights, nor was it within its power to do so. The property in question, long before the passage of this act, was placed entirely beyond the husband's control, as was evidently intended by the testator, and, to a large extent, was also placed beyond the control of Mrs. Browning herself, and, in a modified degree, this same condition of affairs exists at the present time. The husband's relations to the wife, and also to the property, are substantially the same as when the will was made, and also when it went into effect, and to grant the relief sought by the bill, under such circumstances, would, in our judgment, be to defeat the objects and purposes of the testator in making his will. This we are not prepared to do. We are clearly of opinion that the trust still exists, and that it has not, by reason of any subsequent events, become what is known to the law as a dry trust, or executed use. It therefore follows, that the circuit court erred in not sustaining the demurrer to the bill, and also in rendering the decree in the cause.

For the errors mentioned, the decree of the circuit court is reversed, and the cause remanded, with directions to sustain the demurrer to the bill and enter a decree dismissing the same.

*Decree reversed.*