(No. 28061.—

AGNES BELFIELD *et al.,* Appellees, *vs.* NELSON FINDLAY *et al.,* Appellants.

*Opinion filed March 21, 1945.*

SAVAGE, HOLBROOK & McKEOWN, of Joliet, and ROGER CLARKE, guardian *ad litem,* of Yorkville, for appellants.

MILTON A. BROWN, GERALD T. WILEY, both of Chicago, and WILLARD S. OLSON, of Joliet, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, Agnes Belfield, Margaret Horton, Sarah E. Grate, Florence Grate and Ida Grate Silvius, filed a complaint against the defendant, Nelson Findlay, a minor, and Jeanette M. Findlay, guardian of his estate, in the circuit court of Kendall county to quiet title to real estate consisting of an eighty-acre farm. The cloud, alleged in the complaint to exist, arose under the will of Sarah Findlay, deceased. She devised the property to her son, Arthur Findlay, for life, and on his death "the said land to go to his children, or if he leaves no children surviving him, then said land is to go to my daughters."

The will of Sarah Findlay was executed in 1916. She died in 1930. Nelson Findlay was born in 1933. In 1939, he was adopted by Arthur Findlay, who died in 1940. The two plaintiffs first named are the sisters, and the three last named are daughters of a deceased sister of Arthur Findlay. They claim the land under the will of Sarah Findlay, and the decree of the circuit court quieted title in them. Nelson Findlay, who will be referred to as defendant, urges that under the adoption statute of this State he is entitled to take as remainderman. This is the controlling question in the case. Plaintiffs, to sustain the decree, point out that Nelson Findlay, having been adopted after the death of the testatrix, was not in her mind at the time she executed her will, and, in fact, was not born at the time. They argue that the adoption statute does not give to an adopted child the right to take as remainderman in a case such as this, unless it affirmatively appears in the will that the testator so intended.

The adoption of children was unknown to the common law but was known and recognized by the civil law and is now provided for in most States by statute. The statute relating to adoption, in force at the time this will was executed and since, had been in effect since 1874, (Ill. Rev. Stat. 1874, chap. 4, sec. 5,) and is substantially the

same as the act of 1867. Our Adoption Act, section 5, provides: "A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." This section remained in the Adoption Act until the enactment of the Probate Act of 1939, when section 5 of the Adoption Act was re-enacted as section 14 of the Probate Act. Laws of 1939, p. 12.

Under section 10 of the Descent Act, (Ill. Rev. Stat. 1937, chap. 39, par. 10,) now section 48 of the Probate Act, (Ill. Rev. Stat. 1943, chap. 3, par. 199,) it is provided that on the birth of a child to a testator after making his last will, in which no provision was made for such child, the devises and legacies provided in the will, "unless it shall appear by such will that it was the intention of the testator to disinherit such child, * * * shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate." Under this statute it has, since *Flannigan* v. *Howard,* 200 Ill. 396, been held that an adopted child is a "child" within the terms of section 10 of the Descent Act, unless an intention to disinherit is disclosed by the will. In the case cited, it was pointed out that at the time of the enactment of section 10 of the Descent Act, the Adoption Act of 1867 was in existence, and, consequently, that the right of an adopted child to inherit is the same as that of a natural child. This court also observed that while the accepted definition of a "child" refers to the immediate progeny of human parents, yet

by statute the relation of parent and child was recognized and declared to be legally existing between persons not so related by nature. The *Flannigan case* and other similar cases concerning inheritance from the adoptive parents are, however, of little assistance in the solution of the present controversy. Nelson Findlay's rights of inheritance are not material, because he is claiming nothing as an inheritance. His claim is based solely on the will, and, to qualify as remainderman, he must establish his identity as a beneficiary described in the will. In order to successfully conform to the requirements of the prohibitions contained in the exceptions specified in section 5 of the Adoption Act, it is requisite that a showing be made, not only that he is a "child" of Arthur Findlay, his adoptive parent, but, also, that the testatrix had him in mind as a lineal descendant when she executed her will. The law in this State is that a testator is presumed to have known the law and to have made his will in conformity therewith. (*Munie* v. *Gruenewald,* 289 Ill. 468; *Walker* v. *Walker,* 283 Ill. 11; *Rudolph* v. *Rudolph,* 207 Ill. 266.) The state of the law at the time the will was made, therefore, affords considerable assistance in ascertaining the intention of the testator when such intention is otherwise not clear. *Carpenter* v. *Browning,* 98 Ill. 282.

*Keegan* v. *Geraghty,* 101 Ill. 26, decided in 1881, contains an historical sketch of the law pertaining to adoption and treats, in an exhaustive manner, the provisions of section 5 of the Adoption Act. There, an adopted child sought to take, as a half-sister, the intestate estate of a natural child of her adoptive father. The decision necessarily dealt with the exception contained in section 5, to the effect that such adopted child "shall not be capable of taking * * * property from the lineal or collateral kindred of such parents by right of representation." In its opinion, this court pertinently stated: "As we construe the statute, as between the parties to the transaction the

adopted child is deemed, for the purpose of inheritatnce from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock. And when such an adoptive parent dies intestate, having had no children born to him in wedlock, it is reasonable and just that the property he leaves should go to a stranger to his blood, his adopted child. It would be a consequence of his own desire and request in the taking of the adoption proceeding. But another person, who has never been a party to any adoption proceeding, who has never desired or requested to have such artificial relation established as to himself, why should his property be subjected to such an unnatural course of descent? To have it turned away upon his death from blood relations, where it would be the natural desire to have property go, and pass into the hands of an alien in blood,—to produce such effect, it seems to us, the language of the statute should be most clear and unmistakable, leaving no room for any question whatever. We find in our statute of adoption no express language giving to the adopted child the right to inherit from any one else than the adoptive parents." Although the decision in the *Keegan case* was made with respect to whether an adopted child would be considered the same as collateral kindred, the language is relevant, also, to the determination whether an adopted child can be considered in the same category as a lineal descendant.

In *Smith* v. *Thomas*, 317 Ill. 150, the testator gave all the residue of his estate to his executors and trustees to pay so much of the income as he directed to his widow and his son and daughter during their lives and the life of the survivor, and "then to divide the same and the accumulations thereof, between the heirs of my daughter, * * * and the heirs of my son, * * *." In addition, the will provided for sums to be paid for the education "of each grandchild of mine." The testator admonished his trustees to keep in view "that my desire is to

create and preserve for my grandchildren and their heirs an estate having a steady permanent income." The question presented for decision was whether an adopted child of the son of the testator was entitled to share in the distribution of the estate and the income. This court decided that while an adopted child became the child and heir of the testator's son, when he was adopted, he did not become the grandchild of the testator. There, the adopted child was not born until four months after the execution of the will, and was not adopted until nearly five years after the death of the testator and more than six years after the execution of the will. These important facts conclusively demonstrated that the adopted child could not have been in the mind of the testator when he drafted his will.

In *Moffett* v. *Cash*, 346 Ill. 287, the will made devises to the testator's sons and daughters. The devises to three daughters were for life and, on their death, the property was to go, in each case "to her children the issue of her body share and share alike." The devises to the sons were for life and on their death the property was to go to their children, without limiting the term "children" to issue of the body. Since the testator, in his will, indicated an intention to limit the remainder to the issue of the body of each of the daughters, he intended such construction of his devises to his sons, even though he employed no language to express this intent in the latter devises. Neither the language of the will nor the circumstances surrounding the testator at the time the will was executed disclosed an intention on the part of the testator to include an adopted child in the meaning of the word "children," as used in the will. There, again, the court directed attention to the fact that the adopted child was not born until five years after the death of the testator and was not adopted by the testator's son until nearly twenty-six years after the testator's death.

In *Munie* v. *Gruenewald*, 289 Ill. 468, a child adopted by a daughter of the testator was held to be embraced within the word "children," where the testator knew not only of the adoption but also that the adopted child was everywhere recognized as the child of his daughter. Again, in *Wallace* v. *Noland*, 246 Ill. 535, the word "heirs," as used in the will was held to mean "children." In determining the intention of the testator, the circumstances and environment of the testator when the will was drafted, namely, prior to 1867, including the state of the law at the time, were considered. This court decided that the testator could not have intended to include the adopted children of his son in a devise over after the death of such son without children, because, at the time of the execution of the will and, later, when the testator died, there was no statute in existence, and never had been one in this State, authorizing the adoption of a child. There, also, the child was adopted twenty-three years after the death of the testator.

The testatrix, Sarah Findlay, is presumed to have made her will in accord with the statute on adoption in force at the time the will was executed. This presumption is written into the will as much as any part of the will itself. In 1916, the Adoption Act of this State provided that an adopted child, for the purposes of inheritance, and other legal consequences and incidents. of the natural relationship of parent and child, with the exceptions named in the statute, is to be given the same legal rights as if he had been born to the adoptive parents in lawful wedlock. (*Ryan* v. *Foreman*, 262 Ill. 175; *Flannigan* v. *Howard*, 200 Ill. 396.) The statutory provision means that an adopted child may take by will or deed property not "expressly limited to the body or bodies of the parents by adoption," or not derived "from the lineal or collateral kindred of such parents by right of representation." Application of the quoted statutory exception to the admitted

facts discloses that defendant is seeking to take property from the lineal kindred of his adoptive father by right of representation. This, the statute expressly forbids. A concession that the testatrix did not have any specific children or particular class of children in mind when she, in 1916, executed her will does not aid defendant. Under the applicable statute and the decisions construing it, defendant cannot possibly take as remainderman the farm devised to Arthur Findlay unless, as in *Munie* v. *Gruenewald*, 289 Ill. 468, he, an adopted child, was known by, and within the contemplation of, the testatrix when she executed her will. The contention is not, and cannot be, made that defendant was within the contemplation of Sarah Findlay when she made her will prior to the birth of defendant and, necessarily, before his adoption by her son, Arthur.

Although favoring the taking by an adopted child of the estate of his adoptive parents, the law does not extend the privilege beyond the parties directly participating in the adoption proceedings, unless an intention so to do is clearly warranted. Thus, in the *Smith case* and the *Moffet case*, adopted children of life tenants were denied the privilege of taking as remaindermen the interests to which their adoptive parents were entitled where the children were not in existence during the lifetime of the respective testators. Manifestly, the testators in those cases did not have the adopted children in mind when the wills were drawn. The only case cited in which an adopted child was entitled to take property devised by a parent of a life tenant is *Munie* v. *Gruenewald*, 289 Ill. 468, where the adopted child was known by the testator and, as a matter of fact, within his contemplation when the will was executed. Here, defendant, the adopted child, was not born until seventeen years after the execution of the will of Sarah Findlay and, we note again that she died three years prior to defendant's birth and nine years before he was adopted. It follows

that, under the law established by applicable decisions, defendant is not the owner of the property in controversy. Arthur Findlay, at his death, not having been survived by any child or children or other lineal descendants, within the meaning of his mother's will, the land devised by her became the property of plaintiffs, and title was properly quieted in them. Our conclusion is in accord with the great weight of authority. Indeed, "It is almost universally agreed that where a provision is made in a will for children of some person other than the testator, an adopted child is presumed not to be included unless there is language in the will, or there are circumstances surrounding the testator at the time he made the will, which make it clear that the adopted child was intended to be included." 70 A.L.R. 621.

The only other contention requiring consideration is the claim that defendant should be reimbursed for improvements made in 1938 by Arthur Findlay. He urges that this relief should be granted under the equitable maxim, "He who seeks equity must do equity." There is no merit to the contention. Improvements made by a life tenant are deemed to have been made for his own benefit and enjoyment, and, upon termination of the life tenancy, pass to the remainderman without liability to recompense the life tenant's estate. *Brown* v. *Hall,* 385 Ill. 260; *Chilvers* v. *Race,* 196 Ill. 71.

The decree of the circuit court of Kendall county is affirmed.

*Decree affirmed.*

Mr. JUSTICE STONE, dissenting:

I cannot concur in the holding of the majority opinion. Under our Adoption Act, an adopted child, "for the purposes of inheritance,"—not from the adopting parent as some statutes provide, but for inheritance generally,—is to be considered the same as though it were born in lawful wedlock, except that "he shall not be capable of taking

property expressly limited to the body or bodies of the parents by adoption," with other limitations not material here. It is the law in this State that the testator is presumed to have known the law and to have made his will in conformity therewith. (*Munie* v. *Gruenwald,* 289 Ill. 468; *Walker* v. *Walker,* 283 Ill. 11; *Rudolph* v. *Rudolph,* 207 Ill. 266.) The state of the law, therefore, at the time the will was made, affords material assistance in arriving at the intention of the testator when such intention is otherwise not clear. (*Carpenter* v. *Browning,* 98 Ill. 282.) In the case before us there is no evidence whatever to rebut that presumption. Certainly there is nothing in the will to show a contrary intention.

The majority opinion cites *Smith* v. *Thomas,* 317 Ill. 150. In that case the testator gave all the residue of his estate to his executors and trustees to pay so much of the income as he directed to his widow and his son and daughter during their lives, and the life of the survivor, and, in addition, provided for sums to be paid for the education "of each grandchild of mine." In his will he also admonished his trustees to keep in view "that my desire is to create and preserve for my grandchildren and their heirs an estate having a steady permanent income." The question was whether an adopted child of the son of the testator was entitled to share in the distribution of the estate and the income therefrom. It was held that while an adopted child became the child of the testator's son, when he was adopted, he did not become the grandchild of the testator. It will readily be perceived that in that case the will specifically provided that the income should be paid to his grandchildren, and it was rightly held that a child who had been adopted by his son did not thereby become the testator's grandchild. In that will there was language showing the intention of the testator that a specific class of children, *i.e.,* his grandchildren, should take. In the will before us there is no word that can be construed as an

expression of an intent that only the children of the blood of Arthur Findlay shall take. The language is "if he dies leaving no children."

*Moffet* v. *Cash,* 346 Ill. 287, is also cited. In that case the will made devises to the testator's sons and daughters. The devises to three daughters were for life and on their death the property was to go, in each case, "to her children the issue of her body share and share alike." The devises to the sons were for life and on their death the property was to go their children, without limiting the term "children" to issue of the body. It was there held that, as the testator in his will indicated an intention to limit the remainder to the issue of the body of each of the daughters, it should be held that he intended such construction of his devises to his sons, and this even though he used no language to express that intent in the latter devises. The presumption arising from the state of the law at the time was not considered and the reasoning in the opinion should not be adhered to.

In *Wallace* v. *Noland,* 246 Ill. 535, this court held that while the word "heirs" in its general sense includes adopted children, yet where the word "heirs" has been construed by this court to mean "children," and where, at the time the will was made and at the time the testator died, there was no statute in this State giving adopted children the right to inherit, (the testator in that case having died before the Adoption Act of 1867,) such adopted children could not take. It is there pointed out that the state of the law at the time of the execution of the will may be considered.

In *Munie* v. *Gruenewald,* 289 Ill. 468, the will used the term "children" in naming certain beneficiaries. It was held that in so doing the testator was presumed to know the law in relation to an adopted child and that the adopted child there involved should take. In that case the testator knew of the adoption and treated the adopted

child as his own grandchild, though there was nothing in the will so indicating. That fact was treated as evidence of his intention. That case cannot be construed as authority for the contention here, that in the absence of such facts, the presumption of intent on his part to comply with the adoption statute does not apply. On the contrary, the rule as to presumption and supporting cases are cited with approval.

Section 5 of our Adoption Act was taken *verbatim* from the Massachusetts statute on that subject. The construction of the act was announced by the Massachusetts court in *Sewall* v. *Roberts,* 115 Mass. 262. The question arose whether Ada Parker, an adopted daughter, took under a trust as the child of the settlor. In construing the adoption statute, the court said: "This language is very broad and comprehensive, and it was manifestly the intention of the legislature to provide that, with the exceptions named, the adopted child should, in the words of the sixth section, 'to all legal intents and purposes be the child of the petitioner.' The adopted child, in this case, therefore, in construing her father's settlement, must be regarded in the light of a child born in lawful wedlock, unless the property disposed of by the settlement falls within one of the exceptions. It is true that if she takes under the settlement, the property does not come to her by inheritance, but it comes to her as one of the legal consequences and incidents of the natural relation of parents and children." In that case it was urged that the result reached was opposed to the intention of the settlor. In answer, the court said: "But, as is often the case in deeds or wills providing for a remote future, he could have had no intentions as to the particular person who was to take. His general intention was that the property should go in the first instance to his children as a class. Whoever at his death fell within this class was within this general intention, and as his adopted daughter is by law his child,

she belongs to the class intended to take, and her rights cannot be defeated upon the presumption that he did not intend her to take." Later the Massachusetts General Assembly amended the adoption statute of that State to read, in effect, that a child by adoption shall not have the right of inheritance as a child born in lawful wedlock unless such appears to have been the intention of the testator, and the Massachusetts cases of *Wyeth* v. *Stone,* 144 Mass. 441, 11 N. E. 729, and *Blodgett* v. *Stowell,* 189 Mass. 142, 75 N. E. 138, said to be in support of the position that the adopted child in this case does not take, were both decided after this change in the statute.

In *Russell* v. *Musson,* 240 Mich. 631, 216 N. W. 428, the Michigan Supreme Court held that the question whether an adopted child does or does not take turns upon the intention of the testator. Examination will disclose that the Michigan statute does not contain the significant provision of our statute, herein referred to, which shows a legislative intent that the adopted child shall inherit unless the devise is "expressly limited to the body or bodies of the parents by adoption." It will also be noted that in our statute the language is "a child so adopted shall be deemed, for the purposes of inheritance by such child" the child of the adopting parent. Such language is more comprehensive than that of the Michigan statute, which declares that the adopted child "shall become and be an heir at law of such person," (adopting parent.) Bouvier defines inheritance as follows: "The term 'inheritance' includes not only lands and tenements which have been acquired by descent, but every fee simple or fee tail which a person has acquired by purchase." It is a rule of general acceptance that the language of a statute is to be construed in its generally accepted meaning unless another meaning is specified in the act.

In *In re Leask,* 197 N. Y. 193, 90 N. E. 652, cited by appellees, the statute under consideration provided that

foster parent and minor shall have all the rights of parent and child including the right of inheritance from each other "but, as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the minor is not deemed the child of the foster parent so as to defeat the rights of remaindermen." Under this statute, it was held that the expression in the will "leaving a child or children" had reference to the natural offspring of the life beneficiary and that an adopted child could not take. It will be observed that the New York statute is so notably different from ours that the case is of little aid here.

In *Lichter* v. *Thiers,* 139 Wis. 481, 121 N. W. 153, the Wisconsin Supreme Court held that the adoption statute did not affect the question whether a child shall take as a child of the adopted parents except that it may be used to explain what the testator had in mind by the use of the term "child or children," but whether the testator intended the term "child or children" to mean adopted children or children of the blood depended upon the circumstances; that there is no arbitrary rule on the subject except that the testator's intent must govern. The opinion noted, however, that the authorities are not entirely in harmony. The Wisconsin court cites, in support of its determination that an adopted child does not take, *Wyeth* v. *Stone,* 144 Mass. 441, 11 N. E. 729, and *Blodgett* v. *Stowell,* 189 Mass. 142, 75 N. E. 138, which, as we have already seen, were decided after the amendment of the statute from which the Wisconsin statute and our statute were taken.

The rule, announced in some of the cases cited by appellees, that, unless it plainly appears to have been the intention of the testator to include an adopted child, such child is to be excluded, is not based on statutes as broad as ours. On the other hand, the Massachusetts case of *Sewall* v. *Roberts,* 115 Mass. 262, construing the effect of

the adoption statute from which ours was taken, holds that, unless it be seen that the testator intended to exclude adopted children, they shall take. Which of these views presents the more reasonable rule? No case decided by this court is inconsistent with the line of cases headed by the Massachusetts case, *Sewall* v. *Roberts,* except *Moffet* v. *Cash,* hereinbefore referred to. While cases in foreign jurisdictions are not in entire harmony, I believe the Massachusetts rule to be more sound and just.

In *Mooney* v. *Tolles,* 111 Conn. 1, 149 Atl. 515, the will provided for the payment of the income from a trust fund during the lifetime of a named son "to his lawful children" and upon his death to pay the principal of the trust fund to this son's lawful child or children "or if he leaves no lawful child" then among the lawful issue of another named son. After the will was executed the son adopted a child. He had no child, issue of his body. It was held, under an adoption statute substantially identical with ours, that the adopted child was entitled to take. It was pointed out that there was an adoption statute in effect in that State at the time the will was executed and it was presumed that the testatrix knew and acted in contemplation of the reciprocal rights and duties resulting from the existing statute. It is there said: "Where the statutes are broad and comprehensive in their terms, the testator is generally held to have intended to include a child of adoption within the terms "child or children;' * * * By it [the statute] the adopted child becomes, by the fact of adoption, the child, in name and in law, of its parents, with all the reciprocal rights and duties existing between them as between natural child and parent, and with the right of inheritance between parent and child and their relatives the same as though such adopted child were the natural child of such adopting parent." It will be noted that the court did not depend on surrounding circumstances to arrive at its conclusion. In fact, in that

case, as here, the will was executed before the adoption took place.

*In re Olney,* 27 R. I. 495, 63 Atl. 956, was a case where a life tenant, after the death of the testator, adopted a child. The testator's will gave the income of the estate to this life tenant and then to another for life, and upon the death of both life tenants the trust *res* was to be distributed to the "children then living" of each life tenant. It was in that case held, under an adoption statute identical with ours, that an adopted child of one of the life tenants took the same interest she would have taken had she been a child of the body. See also *Hartwell* v. *Tefft,* 19 R. I. 644, 35 Atl. 882.

The majority opinion quotes the language of the annotator in 70 A. L. R. p. 621: "It is almost universally agreed that * * * an adopted child is presumed not to be included unless there is language in the will, or there are circumstances surrounding the testator at the time he made the will, which make it clear that the adopted child was intended to be included." The cases cited which consider a statute as broad as ours do not support the conclusion of the annotator. See *Sewall* v. *Roberts,* 115 Mass. 262; *Mooney* v. *Tolles,* 111 Conn. 1, 149 Atl. 515, and other cases above cited, which consider statutes as broad as ours, and where the rule, as in this State, is that the testator is presumed to have made his will in conformity with the statute of the State at the time the will is executed. It is clear to me in this case that the testatrix intended to give the remainder, at the death of the life tenant, to a class designated as "children." Under our adoption statute an adopted child belongs to that class. In holding otherwise the majority opinion reads into the will an intention contrary to the statute and not expressed in the will.

The presumption that the testatrix made her will in accord with the statute on adoption in existence at the time

the will was executed is written into the will as much as any part of the will itself. In the absence of any language or circumstances rebutting that presumption, it becomes conclusive. At the time Sarah Findlay made her will the Adoption Act of this State provided that an adopted child, for the purpose of inheritance and other legal consequences and incidents of the natural relation of parents and children, with the exceptions named in the statute, is to be given the same legal rights as if it had been born in lawful wedlock. (*Ryan* v. *Foreman,* 262 Ill. 175; *Flannigan* v. *Howard,* 200 Ill. 396.) I am of the opinion that our adoption statute means and should be construed to mean that an adopted child may take by will or deed property not "expressly limited to the body or bodies of the parents by adoption." From this language clearly appears the legislative intent that where no such limitation appears in such will or deed, an adopted child shall come within the terms "child or children." If this be not the correct construction, why so limit the rights of such child? It seems clear to me that the General Assembly intended that where such limitation does not exist such child should take. To hold otherwise is to render such limitation meaningless. Nor can any other construction be given to this will without importing into it a provision expressly limiting "children" to those of the body of Arthur Findlay. How, in the face of the statutory presumption, can it be said that the word "children" was intended by the testatrix to include children of the blood of Arthur Findlay and not those by adoption, unless there be such importation? In other words, it is necessary to such holding that there be read into the will the words "issue of his body" following the word "children." None of these words, or any words indicating such a limitation, appear in the will, and such construction runs counter to the presumption that the testatrix made her will in accord with the statute.

The facts that appellant Nelson Findlay was not born at the time the will was executed and that the testatrix could not have had him in mind are not to be taken as an indication that she may not, under the presumption of her knowledge of the law, have intended that children, as a class, whether they be of Arthur's blood or by adoption, shall take. It can hardly be said that she had any specific children or particular kind of children in mind when she, in 1916, executed the will. The gift was to a class. To hold that she intended children only who were of the blood of Arthur is to presume, without any corroborating word from her, that she did not intend that her will should harmonize with the Adoption Act, knowledge of which she is presumed to have. As the word "children" is given no restricted meaning in the will, and as under the Adoption Act an adopted child is the lawful child of the adopting parents, it seems more in accord with legislative intent, and certainly with the best interests of society, to hold that the General Assembly intended that where, as here, the will put no limitation on the word "children," an adopted child shall be within the term.