DONALD B. SHORTRIDGE, Ex'r of the Estate of John Henley Eversole, Plaintiff-Appellee, v. NINAH DUNLAP WAGNER SHERMAN et al., Defendants-Appellees.—(MARY ELLEN BLASINGHAM et al., Defendants-Appellants.)

Fourth District   No. 15840

Opinion filed June 6, 1980.—Rehearing denied July 10, 1980.

W. Kenneth Porter, of Busch, Harrington & Porter, of Champaign, for appellants.

George V. Eighmey, of Thomas, Mamer, Haughey & Miller, and Follmer, West & Erdmann, both of Champaign, for appellees.

Jerry Bromiel, of Urbana, and John H. Elder, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, and Paul C. Hendren, of Williamson, Miller & Hendren, both of Champaign, guardians ad litem.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from an order of the circuit court of Douglas County

declaring the rights of the parties under section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.1). The question presented is the ownership of 320 acres of farm land located in Douglas County. The trial court, sitting without a jury, tried the case on a stipulation of facts and permitted an adopted child to take as a remainderman under a deed executed in 1912.

In order to better understand the respective contentions of the parties on appeal, some recitation of the facts and the alignment of the parties, both on the trial and appellate levels, is required.

In 1912, John W. Wagner and Sarah E. Wagner, his wife, being possessed of considerable land, made conveyances by deed of separate tracts of land to four each of their five children. There is no evidence, but it is generally accepted by the family that an equivalent gift of cash was made to the fifth child.

The language in controversy in the deed which is the subject of this litigation reads as follows:

> "The grantors, John M. Wagner and Sarah Ellen Wagner, his wife, of the county of Douglas in the State of Illinois, for and in consideration of the sum of sixty-four thousand dollars in hand paid, convey and warrant to Ninah Dunlap Wagner for and during her natural life and upon her death, then to her children, but if no child or children survive her then unto the child or children, and his, her or their descendants surviving the above named grantors, the following described real estate, to wit: * * *."

Ninah Dunlap Wagner was a daughter of John and Sarah Wagner. Conveyances of other property with identical language in the deeds were made to two other daughters, Orpha and Hazel. A fourth conveyance was made to a son, John Dwight Wagner, with the following variation in language:

> "* * * for and during his natural life and upon his death, then unto the children of his body begotten of lawful marriage, but if no child or children survive him, then unto the child or children and his, her descendants surviving the above named grantors * * *."

All five children, namely, Ninah Dunlap Wagner Sherman, Hazel Wagner Voyles, Joseph Ralph Wagner, Orpha Wagner Eversole and John Dwight Wagner, survived their parents, the grantors in the deeds. All of them except Ninah had died at the time this suit was filed.

Ninah Dunlap Wagner Sherman, the life tenant under the deed in question, was alive at the institution of this lawsuit but died during its pendency. She had no natural children but adopted one child, Betty Lou Shartel, defendant-appellee (herein Elizabeth Louise Shartel), whom the trial court held to be a "child" within the meaning of the limitation in the 1912 deed.

The plaintiff in this action is the executor of John Henley Eversole,

the only child of Orpha Eversole, one of the children named above. He claims that his decedent became the owner of an undivided one-fifth of the land under the deed to Ninah Dunlap Wagner Sherman. This claim is premised on the conclusion that Elizabeth Louise Shartel, being an adopted child, could not take as a remainderman under the 1912 deed and therefore his decedent took the one-fifth share as a descendant of his mother, one of the children of the grantors who survived them.

Defendants on the trial level were Ninah and her adopted daughter Elizabeth, together with all the living grandchildren and great-grandchildren of the grantors. As previously indicated and as will be more fully developed below, the trial court held in favor of the defendant Elizabeth Louise Shartel, adopted daughter of Ninah. Its final order places the fee simple title to the premises in Elizabeth.

On appeal the parties have realigned themselves. The living grandchildren and great-grandchildren (herein grandchildren) are appellants and plaintiff and Elizabeth are appellees. The first and primary issue on appeal is whether Elizabeth, as an adopted child, can take as a remainderman under the deed. If she cannot, plaintiff and grandchildren will share in the premises, and therefore as to this issue, plaintiff as an appellee has aligned himself with the grandchildren appellants.

All parties have raised and briefed on appeal a second issue which was not passed upon by the trial court: Assuming that Elizabeth cannot take as a remainderman, at what time, the death of the surviving grantor or the death of the life tenant, does the alternative contingent remainder vest? Since the trial court held in favor of Elizabeth, it was not necessary for it to reach this issue. Ordinarily we would not entertain this issue under the circumstances, but since we have concluded that the trial court was in error on the primary issue, we feel compelled to speak under the authority of Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)) in order to avoid further litigation and appeals. We have also denied a motion of Child Care Association of Illinois for leave to file a brief *amicus curiae*.

We turn then to the primary issue. As indicated above, the deed was executed in 1912; John W. Wagner, one of the grantors, died in 1919; Sarah E. Wagner, the other grantor, died in 1923; all five of their children survived in 1923; Ninah Dunlap Wagner Sherman adopted Elizabeth Louise Shartel in 1927. Given this set of facts, the instant case is *prima facie* governed by the leading case of *Belfield v. Findlay* (1945), 389 Ill. 526, 60 N.E.2d 403. In its memorandum opinion the trial court expressly rejected *Belfield* and held that it contained a "fallacy." In this court Elizabeth makes varied attacks on the rule of *Belfield*, urging that it is bad law and contrary to modern concepts of sociology and public policy.

■■ Without attempting to answer in detail all these arguments, we deem it sufficient to say that it is not the province of this court, or of any court,

whether *nisi prius* or of intermediate appeal, to overrule the supreme court. Furthermore, the rationale of *Belfield* was reaffirmed by the supreme court as recently as October 1979, in *Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539.

In *Belfield*, the testator devised land to her son, Arthur Findlay, for life and on his death "the said land to go to his children, or if he leaves no children surviving him, then said land is to go to my daughters." The testator executed the will in 1916 and died in 1930. Arthur Findlay adopted Nelson Findlay in 1939. Nelson was born in 1933. The plaintiffs were sisters and descendants of sisters of Arthur; Nelson was the defendant and claimed that he could take the land under the adoption statute. The supreme court held that he could not and said:

"* * * Here, defendant, the adopted child, was not born until seventeen years after the execution of the will of Sarah Findlay and, we note again that she died three years prior to defendant's birth and nine years before he was adopted. It follows that, under the law established by applicable decisions, defendant is not the owner of the property in controversy." 389 Ill. 526, 533-34, 60 N.E.2d 403.

The Adoption Act in force at the time of the delivery of the deed in the instant case in 1912 is the same as was in effect in *Belfield* (Ill. Rev. Stat. 1874, ch. 4, par. 5) and read as follows:

"A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

The *Belfield* court held, *inter alia*, that the defendant there was attempting to take by right of representation and thus was expressly excluded by the statute. This has been severely criticized by commentators as erroneous, and such criticism has been cited by Elizabeth in the instant case (*e.g.*, H. Carey & D. Schuyler, Illinois Law of Future Interests §139 (Supp. 1954)). However, the court also placed its decision on another ground when it said: "Although favoring the taking by an adopted child of the estate of his adoptive parents, the law does not extend the privilege beyond the parties directly participating in the adoption proceedings, unless an intention so to do is clearly warranted." 389 Ill. 526, 533, 60 N.E.2d 403.

The court pointed out a case in which an adopted child was known to the testator and was within his contemplation (*Munie v. Gruenewald* (1919), 289 Ill. 468, 124 N.E.2d 605) and likewise pointed out other cases in which the testator manifestly did not have adopted children in mind when the will was made. It held that the case before it fell into the latter category and used the language cited above.

In the instant case it is apparent that the trial court used the latter basis for its decision. While being critical of *Belfield* in general, the trial judge held that the difference in language between the deeds to Ninah and her sisters and the deed to their brother indicates that the grantors had something different in mind, to-wit, possible adoption of children by the sisters. However, this would lead to an incongruous result that an adopted child of the brother would be specifically excluded by the statute while the adopted children of the sisters would be included by implication. Plaintiff argues that the difference in language is intended to exclude illegitimates so far as the brother is concerned. However, this would lead to the equally incongruous result that under the descent act of 1872 (Ill. Rev. Stat. 1937, ch. 39, par. 2) illegitimates of the sisters would be included as a matter of law. The difference in language among the deeds is too insolubly ambiguous to serve as a predicate for the inclusion of adoptees. Exactly what the grantors had in mind may never be known, but it is known that they are presumed to have made the deeds in accordance with the law in existence at the time. As the *Belfield* court said: "The testatrix, Sarah Findlay, is presumed to have made her will in accord with the statute on adoption in force at the time the will was executed. This presumption is written into the will as much as any part of the will itself." 389 Ill. 526, 532, 60 N.E.2d 403, accord, *Stewart v. Lafferty* (1957), 12 Ill. 2d 224, 145 N.E.2d 640.

In this connection the court in *Belfield* also said: "The state of the law at the time the will was made, therefore, affords considerable assistance in ascertaining the intention of the testator when such intention is otherwise not clear. *Carpenter v. Browning*, 98 Ill. 282." 389 Ill. 526, 529, 60 N.E.2d 403.

■■ In summary, then, we reject any theory of representation; we find that any difference in language in the four deeds affords no basis for determining the intent of the grantors; but we do find that the state of the law in 1912 determines that the intent of the grantors was to exclude adoptees as remaindermen.

We believe that our conclusion is strengthened by the language of the amendment of 1955 to section 14 of the Probate Act (now Ill. Rev. Stat. 1977, ch. 110½, par. 2—4) which provided that an adopted child was deemed a natural child unless the contrary intent plainly appeared, but

limited the amendment to instruments executed after September 1, 1955, and specifically mandated that it should not be used in construing instruments executed prior to September 1, 1955.

Having concluded that the trial court was in error in finding a fee simple title to be in Elizabeth, we must next consider a question not reached by the trial court concerning the time at which the alternative contingent remainder created in the 1912 deed vested. As we have already stated above, normally any question not reached on the trial level is remanded for consideration. However, what is presented here is a pure question of law, and we believe that under Supreme Court Rule 366 (a)(5) we have the power to "give any judgment.* * * that ought to have been given or made * * *" (73 Ill. 2d R. 366 (a)(5)).

On this question the three groups of parties to this appeal realign themselves further depending on where their respective interests lie. Plaintiff-appellee claims that the remainder vested on the death of the last grantor; Elizabeth and the grandchildren claim that it did not vest until the death of the life tenant, Ninah. While it is not precisely clear from the record, a fair appraisal of filing dates and allegations would indicate that plaintiff's decedent died before Ninah, and the record is clear that he died childless. Therefore, if the remainder vested on the death of the life tenant, any share attributable to him would be pyramided on the others.

Elizabeth and the grandchildren rely largely on *Drury v. Drury* (1915), 271 Ill. 336, 111 N.E. 140, and its progeny. In *Drury*, the supreme court found no language in the will which limited the remainder to those in existence at the death of the testator; it then applied the rule that when a class gift is not so limited, the members of the class must survive the life tenant in order to take.

We find *Drury* inapplicable here for two reasons. First, the plain language of the 1912 deed refers to "descendants surviving the above named grantors." In this there is no ambiguity and hence no necessity for construction. Second, in *Hofing v. Willis* (1964), 31 Ill. 2d 365, 201 N.E.2d 852, the supreme court expressly disapproved *Drury* as a mechanical and universal rule of construction, assuming that construction is required.

The grandchildren argue that the use of the word "then" indicates an intention to postpone vesting; *i.e.*, "* * * to Ninah * * * and upon her death, then to her children * * * then unto the child or children, and his, her or their descendants * * *."

We do not view the use of "then" in this context as chronological but rather as a matter of enumeration or narration.

■■ The grandchildren further argue that vesting on the death of the grantors opened up the potential for the life tenants to take a portion in fee and that this is inconsistent with the over-all scheme of distribution of keeping the property within the general class of "descendants." We

find nothing to prevent such a result. A life tenant may be included in a class of remaindermen in the absence of a specific intent to exclude him. *Himmel v. Himmel* (1920), 294 Ill. 557, 128 N.E. 641; *In re Estate of Evans* (1975), 31 Ill. App. 3d 753, 334 N.E.2d 850.

Throughout this litigation the parties have treated the deeds referred to above as deeds of gift rather than as deeds of purchase, even though they recite an unusually large consideration. The stipulation of facts upon which the case was decided in the trial court refers to "a separate gift in cash" to the fifth child. From these premises we also have elected to treat the deeds as those of gift and express no opinion as to whether the limitations contained in them would be valid in the case of a deed or purchase.

The order of the circuit court of Douglas County finding a fee simple title to the premises in Elizabeth Louise Shartel is reversed. It is the further order of this court that the remainder vested on the death of the last grantor. The cause is therefore remanded to the circuit court of Douglas County with directions to enter an amended order in accordance with the views herein expressed.

Reversed and remanded with directions.

MILLS, P. J., and TRAPP, J., concur.